In re Lakeyda Renee TYSON, Debtor,

Lakeyda Renee Tyson, Plaintiff,

v.

Ricky Hunt and United States of America Department of Agriculture, Rural Housing Service of Rural Development, Defendants.

Ricky Hunt, Cross–Claimant,

v.

United States of America Department of Agriculture, Rural Housing Service of Rural Development, Cross–Defendant.

Bankruptcy No. 10–13207.
Adversary No. 10–5246.

United States Bankruptcy Court,
W.D. Tennessee,
Eastern Division.

June 7, 2011.

Jeffrey A. Smith, Harrell & Smith, Trenton, TN, for Plaintiff.

Brett D. Stokes, Della–Rodolfa, Stokes & Cole, Knoxville, TN, James Lee Croom, Jackson, TN, for Defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: (1) PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, (2) DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, and (3) CROSS–DEFENDANT'S MOTION TO DISMISS CROSS–COMPLAINT

G. HARVEY BOSWELL, Bankruptcy Judge.

The Court conducted a hearing on the Plaintiff's motion for summary judgment, the Defendant's motion for summary judgment, and the Cross–Defendant's motion to dismiss the cross-complaint on May 19, 2011. FED. R. BANKR.P. 9014. These matters are core proceedings. 28 U.S.C. § 157(b)(2)(A). The Court has reviewed the testimony from the hearing and the record as a whole. This memorandum opinion shall serve as the Court's findings of fact and conclusions of law. FED. R. BANKR.P. 7052.

### Findings of Fact

The facts in this proceeding are essentially undisputed. The debtor, Lakeyda Renee Tyson, ("Debtor"), filed a petition for chapter 13 bankruptcy relief on September 22, 2010. At the time of filing, the Debtor was the owner of a house and lot located at 708 George Street in Trenton, Tennessee, ("Trenton property"). The Debtor obtained title to the property by a warranty deed from Dwayne and Sherry Burkett dated and recorded on November 24, 2004.

At the time the petition was filed, the United States of America, acting by and through the United States Department of Agriculture, Rural Housing Service of Rural Development, ("USDA"), possessed a valid lien on the Debtor's property which was secured by a properly recorded deed of trust. The Debtor listed "USDA Rural Development, Centralized Servicing Center, P.O. Box 66806, Saint Louis, MO 63166" on Schedule D as the mortgage holder on the Trenton property. The Debtor also listed "USDA Rural Development, Centralized Servicing Center, P.O. Box 66806, St. Louis, Mo 63166–6806," "USDA Rural Housing Servicing, Centralized Servicing Center, P.O. Box 66879, St. Louis, MO 63166–6879," and "Jimmy Croom, AUSA, 109 S. Highland, Ste. 300, Jackson, TN 38301–6145" on her matrix. In its answer to the Debtor's complaint, USDA admitted that notice of the bankruptcy filing was sent to the P.O. Box 66806 address; however, it also stated that it was "without sufficient information to admit or deny whether its [Office of General Counsel] acknowledged that proper notice of the bankruptcy filing was given and received by USDA. USDA further stated that the USDA personnel who conducted the foreclosure sale were not aware

of the bankruptcy filing at the time of the sale.

Prior to filing for bankruptcy relief, the Debtor defaulted on the mortgage on the Trenton property. Consequently, USDA conducted a foreclosure sale on October 5, 2010. Defendant Ricky Hunt, ("Hunt"), purchased the property at the foreclosure sale for $17,500. A substitute trustee's deed was executed on October 12, 2010 and delivered to Edward Guyton, an agent for Hunt, on October 13, 2010.

After execution of the substitute trustee's deed, but before it could be recorded, USDA learned of Debtor's bankruptcy filing. USDA alleges that it then contacted Hunt and his agent and advised them not to record the substitute trustee's deed because of problems with the sale. Hunt's agent recorded the substitute trustee's deed in the Register's Office of Gibson County, Tennessee on October 13, 2010. Hunt disputes that he and/or his agent were contacted prior to the recordation of the deed. In his response to the Debtor's motion for summary judgment, Hunt states that neither he nor his agent were contacted by USDA until 3:54 p.m. on October 13, 2010, which was allegedly after the deed had been recorded. Hunt further alleged that "the problem that arises is that the Deed was already recorded and the Department gave no reason why this shouldn't have occurred."

On October 22, 2010, an attorney from USDA's Office of General Counsel contacted counsel for Debtor via email and advised him that he had contacted Hunt and asked Hunt to execute an agreement waiving the foreclosure as void, cancelling the recorded trustee's deed and reinstating the deed of trust, and that USDA would totally refund the purchase price. USDA's counsel also advised Debtor's counsel that Hunt had refused to waive the foreclosure because he felt he had a claim for expenses associated with the sale. USDA's counsel

further stated that he had informed Hunt he could make a claim against USDA through an administrative procedure, but that Hunt still refused to cooperate.

On November 2, 2010, counsel for Debtor mailed a letter to Hunt explaining that Debtor had filed a petition under the Bankruptcy Code prior to the foreclosure sale and, as a result, the sale was in violation of the automatic stay and null and void. The letter asked Hunt to cooperate with USDA to resolve the matter and set aside the sale. Said letter further advised Hunt that if he refused to cooperate, counsel for Debtor would have no option but to institute an action in this Court seeking to set aside the sale. Hunt admitted that he received this letter on November 8, 2010.

Hunt refused to cooperate and on November 12, 2010, the Debtor filed a Complaint against him and USDA to declare the foreclosure sale void, to set aside and void the substitute trustee's deed and to reinstate the November 2, 2004, deed of trust. The Debtor also asked the Court to assess costs and Debtor's attorney's fees against Hunt and to impose "any such further sanctions on defendant Ricky Hunt for his willful and continuing violation of the automatic stay." The Debtor stated that she was bringing the complaint pursuant to 11 U.S.C. § 362(a)(3) and Federal Rule of Bankruptcy Procedure 7001(7).

On December 21, 2010, Hunt filed a motion to dismiss the adversary complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) in which he alleged that the Debtor had failed to state a claim upon which relief could be granted. Hunt based his motion on the fact that he had no notice of the Debtor's bankruptcy at the time the sale was conducted or at the time the substitute trustee's deed was recorded. Hunt also alleged that 11 U.S.C. § 549(c) prevents the Court from granting the Debtor's complaint. The Court heard

Hunt's motion on January 13, 2011, and denied it. An order memorializing the Court's ruling was entered on February 15, 2011. This order provided that the Hunt's reliance on 11 U.S.C. § 549(c) was inappropriate in this case, that 11 U.S.C. § 362(a)(3) is a sustainable cause of action for the Debtor, and that the Debtors' complaint was sufficient as a matter of law pursuant to Federal Rule of Civil Procedure 8(a).

On February 2, 2011, Hunt filed a cross-claim against USDA alleging he is entitled to damages from USDA for breach of contract, fraudulent conveyance, wrongful foreclosure, unjust enrichment, conversion, slander of title and fraud. Although Hunt averred in the second paragraph of his complaint that these matters are not core proceedings and he did not consent to final orders being entered by this Court, in his prayer for relief, Hunt asks the Court to issue an order granting him a money judgment for his damages and expenses, including attorney's fees. Hunt also asked the Court to declare Hunt as the legal and equitable owner of the Trenton property and to declare that the property is not property of the Debtor's estate. Hunt further sought an order from the Court granting him possession of the Trenton property within 30 days from entry of a final order "or within a reasonable time as defined by the Court." Lastly, Hunt asked the Court to grant him relief from the automatic stay *nunc pro tunc* to October 4, 2010, "due to the actions of the Cross–Defendant, The United States of America, Department of Agriculture, Office of Housing Service and United States and any other responsible party not yet determined." As an alternative basis for relief, Hunt asked for his purchase price of $17,500 to be returned to him along with an award of actual damages with interest. Hunt amended his cross-claim on March 21, 2011, to allege that USDA had also violated the Federal Debt Collection Practices Act.

The Debtor filed a motion for summary judgment on February 11, 2011, in which she alleged that there was no genuine issue of material fact and judgment could be entered as a matter of law pursuant to Federal Rule of Bankruptcy Procedure 7056. The Debtor alleged that there was no genuine issue of material fact that Hunt "willfully violated the automatic stay of § 362 and as such [the Debtor] has suffered damages in the nature of attorney's fees and emotional distress."[1] In discussing the alleged violation of the automatic stay, the Debtor cited 11 U.S.C. § 362(a)(1), (3), (4), and (5).

Hunt filed a response to this motion on February 23, 2011, in which he alleged that the Debtor was not entitled to summary judgment for a number of reasons. First, although the Court had previously addressed the sufficiency of the Debtor's complaint in the order denying Hunt's motion to dismiss, Hunt again alleged that the Debtor's motion was insufficient as a matter of law because it failed to comply with the Federal Rules of Civil Procedure, specifically Rule 56(c). Hunt also alleged that, by citing to 11 U.S.C. § 362(a)(1), (4) and (5), the Debtor's motion for summary judgment averred additional causes of action which were not included in the original complaint and upon which the Debtor may not rely. Second, Hunt alleged that genuine issues do exist as they pertain to allegations against him and that he was entitled to summary judgment against

---

**1.** Debtor's motion for summary judgment also contained allegations that the USDA had acted willfully in violating the automatic stay; however, at the hearing on the Debtor's motion, counsel for Debtor conceded that the USDA did not act willfully or intentionally in violating the stay in this case.

USDA on his cross-claim. Third, Hunt averred that his pending discovery requests made the Debtor's motion premature.

On March 8, 2011, USDA filed a motion to dismiss Hunt's cross-complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7012(b). In that motion, USDA alleges that Hunt's claims are barred by the doctrine of sovereign immunity and that Hunt failed to file a prior administrative claim with the United States Department of Agriculture as required under the Federal Tort Claims Act codified at 28 U.S.C. § 2675(a). USDA also alleged that this Court lacks jurisdiction to adjudicate Hunt's claims pursuant to 28 U.S.C. § 1346(b)(1).

On April 26, 2011, Hunt filed a motion for summary judgment and/or declaratory relief against USDA in which he alleged that USDA has failed to give him possession of and title to the Trenton property. Hunt went on to restate the allegations contained in his previous pleadings.

At the conclusion of the hearing, the Court granted the Debtor's motion for summary judgment, declared the October 5, 2010, foreclosure sale and the deed prepared in accordance thereto void, reinstated the November 24, 2004, deed of trust, and ordered the Trenton property be restored to the Debtor. The Court granted USDA's motion to dismiss the cross-claim and denied Hunt's motion for summary judgment. The Court also ruled that it would abstain from hearing any proof on the issue of damages between the parties. The Court asked USDA's attorney to prepare an order memorializing its ruling, but stated it would issue written findings of fact and conclusions of law as well.

## Conclusions of Law

### A. Federal Rule of Civil Procedure 8

■ Although the February 15, 2011, order denying Hunt's motion to dismiss stated that the Debtor's complaint was sufficient as a matter of law, Hunt again raised the insufficiency argument in his February 23, 2011, response to the Debtor's motion for summary judgment. In that response, Hunt asserted that the Debtor's failure to assert § 362(a)(1), (4) and (5) as grounds for relief in her original complaint prohibited her from seeking relief under these sections in her motion for summary judgment and, therefore, made summary judgment inappropriate. The Court has already ruled on this issue and found Hunt's argument to be without merit. The February 15, 2011, order denying Hunt's motion to dismiss is conclusive on this issue and binding on these parties. Quite simply, it is the law of the case and the Court is precluded from reexamining it *Consolidation Coal Co. v. McMahon*, 77 F.3d 898, 905 n. 5 (6th Cir.1996). However, based on Hunt's reiteration of the insufficiency argument, the Court finds it necessary to more fully set forth the reasons for its conclusion that Hunt's argument regarding the complaint's sufficiency fails.

■ Federal Rule of Civil Procedure 8, made applicable to bankruptcy adversary proceedings by Federal Rule of Bankruptcy Procedure 7008(a), provides that a pleading setting forth a claim for relief must contain:

(1) a short and plain statement of the grounds for the court's jurisdiction ...;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed.R.Civ.P. 8(a)(1)-(3). The statement required by Fed.R.Civ.P. 8(a)(2) is intended "to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007). This requirement ensures "that the defending party can prepare an adequate answer." *The State Bank & Trust Co. v. Spaeth (In re Motorwerks, Inc.),* 371 B.R. 281, 292 (Bankr.S.D.Ohio 2007). Pursuant to this rule, "the form of the complaint is not significant if it alleges facts upon which relief can be granted, even if it fails to categorize correctly the legal theory giving rise to the claim." *Gean v. Hattaway,* 330 F.3d 758, (6th Cir.2003) (internal quotation marks and citations omitted). If the pleading is sufficient to put the defendant on notice of the grounds for which plaintiff is seeking relief, the pleading will be deemed to satisfy the requirements of Rule 8(a)(2) "notwithstanding plaintiff's failure to ... cite the relevant statute." *Chiaverini, Inc., v. Frenchie's Fine Jewelry, Coins & Stamps, Inc.,* 2007 WL 1344183, at *1 (E.D.Mich.2007); *The Liquidation Trust v. Daimler AG (In re Old Carco LLC),* 2011 WL 1833244, at *5 (Bankr.S.D.N.Y.2011) (citing *Northrop v. Hoffman of Simsbury, Inc.,* 134 F.3d 41, 46 (2nd Cir.1997); *McEachin v. McGuinnis,* 357 F.3d 197, 199 n. 2 (2nd Cir.2004)) ("It is well-established that the failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim. Factual allegations alone are what matters.")

In the case at bar, it is true that the Debtor originally stated she was bringing her complaint against Hunt and USDA pursuant to Federal Rule of Bankruptcy Procedure 7001(7) and 11 U.S.C. § 362(a)(3); however, the complaint contains numerous factual recitations regarding the defendants' alleged violation of § 362(a)(1), (3), (4) and (5). The complaint also contains sufficient statements that put the defendants on notice that the Debtor was seeking a judgment against Hunt for his willful violation of the automatic stay. The fact that the debtor did not specifically cite § 362(a)(1), (4) and (5) until she filed her motion for summary judgment is irrelevant. It was clear from the complaint that the Debtor was pursuing relief under all of these subsections of § 362(a). The Court therefore concludes that this addition of statutory citations to the motion for summary judgment is not grounds for denying the Debtor's motion for summary judgment.

### B. Federal Rule of Bankruptcy Procedure 7056 & 11 U.S.C. § 362

#### 1. Federal Rule of Bankruptcy Procedure 7056

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c), made applicable to bankruptcy proceedings by Fed. R. Bankr.P. 7056. "The moving party has the burden of proving that no genuine issue as to any material fact exists and that it is entitled to a judgment as a matter of law." *R.S.W. W., Inc., v. City of Keego Harbor,* 397 F.3d 427, 433 (6th Cir.2005). A moving party can meet its burden under Rule 56(c) by "identifying those parts of the record that demonstrate the absence of any genuine issue of material fact." *Moldowan v. City of Warren,* 578 F.3d 351, 374 (6th Cir.2009) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). With regard to an issue for which the moving party does not bear the burden of proof at trial, however, "the moving party may meet its burden by showing that there is an absence of evi-

dence to support the nonmoving party's case." *Id; Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805–06, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999). "By its very terms, this [Rule 56(c) ] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

Once the moving party has demonstrated that there are no genuine issues as to any material facts, the "nonmoving party 'must show sufficient evidence to create a genuine issue of material fact.'" *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir.1990). The nonmoving party cannot rely on "[a] mere scintilla of evidence" in order to satisfy its burden under Rule 56(c). *Prebilich–Holland v. Gaylord Entm't Co.*, 297 F.3d 438, 442 (6th Cir. 2002); *Moldowan*, 578 F.3d at 374 (the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."). Rather, the nonmoving party must present evidence on which a jury [or the trier of fact] could reasonably find for the nonmovant. *Anderson.*, 477 U.S. at 248, 106 S.Ct. 2505. The existence of a dispute over "irrelevant" or "unnecessary" facts will not defeat a summary judgment motion. *Id.* The substantive law of a particular case will determine which facts are material and which are not. *Id.*

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. When considering a motion for summary judgment, a court must view all the facts and make all

reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Williams v. Mehra*, 186 F.3d 685 (6th Cir.1999). In addressing a motion for summary judgment, the court does not have a "duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Instead, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Poss v. Morris (In re Morris)*, 260 F.3d 654, 665 (6th Cir.2001); *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir.1992).

After reviewing the pleadings in this case and the arguments made at the hearing, the Court concludes that there is no dispute as to the material facts in this case and that those facts entitled the Debtor to judgment as a matter of law.

### 2. 11 U.S.C. § 362(a)

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of—

 (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

 (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the com-

mencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

By virtue of 11 U.S.C. § 541, the filing of a bankruptcy petition creates a bankruptcy estate. Section 541 of the Bankruptcy Code defines "property of the estate" as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). In addition to creating an estate, filing a bankruptcy petition also triggers the protections of the automatic stay under 11 U.S.C. § 362(a). Section 362(a) prohibits creditors from attempting to collect most debts from the debtor or property of the estate. The scope of the automatic stay is broad and "[i]t stops all collection efforts, all harassment, and all foreclosure actions." H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1978), U.S. Code Cong. & Admin. News 1978, pp. 5963, 6297; Smith v. First Am. Bank (In re Smith), 876 F.2d 524, 526 (6th Cir.1989). "It is elementary that the automatic stay comes into existence automatically and immediately upon the filing of a petition in bankruptcy." Webb Mtn, LLC, v. Exec. Realty P'ship, L.P. (In re Webb Mtn., LLC), 414 B.R. 308, 335 (Bankr.E.D.Tenn. 2009) (internal quotation marks and citations omitted). The stay of an act against property of the estate continues until the property is no longer property of the estate. 11 U.S.C. § 362(c)(1). The stay of any other act continues until the case is closed, dismissed, or discharged, whichever is earliest. 11 U.S.C. § 362(c).

Actions taken in violation of the automatic stay are "invalid and voidable and shall be voided absent limited equitable circumstances." Easley v. Pettibone Michigan Corp., 990 F.2d 905, 911 (6th Cir.1993). This rule is true even if the creditor had no notice of the stay. In re Smith, 876 F.2d at 526 ("The automatic stay is effective upon the date of the filing of the petition ... and formal service of process will not be required."); In re Smith, 224 B.R. 44, 46 (Bankr.E.D.Mich. 1998) ("The [automatic] stay applies to all creditors, regardless of notice."). Where notice, or the lack thereof, is an issue,

only where the debtor unreasonably withholds notice of the stay and the creditor would be prejudiced if the debtor is able to raise the stay as a defense, or where the debtor is attempting to use the stay unfairly as a shield to avoid an unfavorable result, will the protections of section 362(a) be unavailable to the debtor.

Easley, 990 F.2d at 911.

A post-petition foreclosure sale violates the protections of the automatic stay as does the post-petition recording of a deed. In re Smith, 224 B.R. at 46; In re Webb Mtn, LLC, 414 B.R. at 335; In re Penfil, 40 B.R. 474, 476 (Bankr.D.Mich. 1984). Withholding possession of property of the estate also constitutes a violation of the automatic stay as "the exercise [of] control over property of the estate." TranSouth Fin'l. Corp. v. Sharon (In re Sharon), 234 B.R. 676, 682 (6th Cir. BAP 1999). Absent the unusual circumstances enumerated in Easley, these actions are void. In re Smith, 224 B.R. at 46.

Where the action at issue is a post-petition foreclosure sale, § 549(c)

does not provide the purchaser with any protection from the voiding of the sale. *Id.* In a case similar to the one at bar, the lienholder on the debtor's property conducted a post-petition foreclosure sale. At the time of the sale, the lienholder was unaware of the debtor's bankruptcy. Upon learning of the chapter 13 filing, the lienholder contacted the purchaser of the property to inform him of the bankruptcy. The debtor then filed an adversary proceeding to set aside the foreclosure as violating the automatic stay and to declare the sale void.

In defense of the debtor's complaint, the purchaser alleged "that § 549(c) provided an exception to the principle that actions taken in violation of the automatic stay are void or voidable by protecting good faith purchasers of real property." *Id.* at 46. The *Smith* court found that argument to be without merit:

> The Court concludes that § 549(c) is inapplicable in this context. Section 549(c) provides an exception to the trustee's right to avoid a transfer of property under § 549(a). However, this case does not involve an avoidance action under § 549(a). Rather, Smith moved to set aside the foreclosure sale because it violated the automatic stay. Section 549(a) was never implicated, and, accordingly, the exception to § 549(a) is not applicable. Further, because the Court has determined that the foreclosure sale is void, the sale did not result in a transfer for purposes of § 549(c).

*Id.* at 47.

 In the case at bar, there is no dispute that USDA violated the automatic stay when it conducted the foreclosure sale on October 5, 2010. It is also clear that Hunt's recordation of the deed on October 13, 2010, violated the automatic stay. Additionally, Hunt's refusal to cooperate in voiding the foreclosure sale by reconveying the deed to the Trenton property qualifies as withholding possession of property of the estate and is a continuing violation of the automatic stay. The fact that the parties may not have had notice of the automatic stay's existence at the time of the foreclosure sale on October 5, 2010, or at the time the deed was recorded on October 13, 2010, is immaterial to the decision that these actions are voidable.

 There is nothing in the record, nor are there any allegations, that the debtor withheld notice of the case filing or the existence of the automatic stay from USDA or Hunt in either an unreasonable or unfair manner. The Debtor listed USDA on her petition and her matrix and USDA admitted to receiving notice of the case. Hunt was obviously not listed on the matrix since he is not one of the debtor's creditors; however, as soon as the Debtor learned that Hunt had purchased the Trenton property at the foreclosure sale, the Debtor's attorney wrote to Hunt informing him of the bankruptcy filing. There is simply no evidence that the Debtor is attempting to use the protections of the automatic stay to do anything other to obtain the protections afforded her by the Bankruptcy Code.

As a result of these findings, the Court concludes that the foreclosure sale, the recordation of the deed and Hunt's failure to cooperate in setting aside the foreclosure sale are violations of 11 U.S.C. § 362(a). There are no equitable circumstances that indicate an exception should be made to the general rule that actions taken in violation of the automatic stay in this case are invalid and voidable. The Court therefore concludes that the foreclosure sale conducted on October 5, 2010, is void. As a result, the Court concludes that the sale should be set aside and the November 24, 2004, deed of trust transferring the property to the debtor should be restored.

Section 362(k) of the Bankruptcy Code provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C.A. § 362(k)(1).[2] As a practical matter, the § 362(a) automatic stay, if innocently violated, will not halt collection activity of creditors, if such creditors are not actually aware that the debtor has in fact filed a bankruptcy case. If, however, a creditor knowingly and willfully ignores the statutory prohibitions provided by the automatic stay, the creditor may be subject to sanctions for violations of the stay. Because Congress chose to use the word "shall" in drafting § 362(k), the imposition of sanctions under this statute is mandatory. A bankruptcy court does not have the discretion to decide if sanctions are the appropriate remedy for a violation of the stay. So long as there is a "willful violation," the court must impose them.

The term "willful" is not defined by the Bankruptcy Code; however, courts have been rather thorough in interpreting the term. Judge Stair of the Eastern District of Tennessee aptly summed up the interpretation as follows:

A violation [of the automatic stay] is willful if "the creditor deliberately carried out the prohibited act with knowledge of the debtor's bankruptcy case." *Walker v. Midland Mortgage Co. (In re Medlin),* 201 B.R. 188, 194 (Bankr. E.D.Tenn.1996). The level of culpability necessary for a "willful" violation of the stay has been summarized as follows:

A specific intent to violate the stay is not required, or even an awareness by the creditor that her conduct violates the stay. It is sufficient that the creditor knows of the bankruptcy and engages in deliberate conduct that, it so happens, is a violation of the stay. Moreover, where there is actual notice of the bankruptcy it must be presumed that the violation was deliberate or intentional. Satisfying these requirements itself creates strict liability. There is nothing more to prove except damages. *In re Daniels,* 206 B.R. 444, 445 (Bankr.E.D.Mich. 1997) (internal citations and quotations omitted). "[G]ood faith is not a defense and is irrelevant to liability." *Id.* at 446.

*In re Printup,* 264 B.R. 169, 173 (Bankr. E.D.Tenn.2001). It is irrelevant to a court faced with imposing § 362(k) sanctions whether a defendant actually intended to violate the automatic stay. So long as the defendant had knowledge of the bankruptcy case and took a deliberate act in violation of the automatic stay, a bankruptcy court must award the plaintiff actual damages. *In re Hill,* 222 B.R. 119, 123 (Bankr.N.D.Ohio 1998); *see also* 11 U.S.C. § 342(g)(2) (monetary penalties imposed under § 362(k) may only be awarded if the creditor receives appropriate notice of the case in compliance with § 342 or actual notice of the case.).

Should the court make an additional finding that the defendant acted in bad faith or with malice, the court may also award punitive damages to the debtor. *Crysen/Montenay Energy Co. v. Esselen Assocs., Inc. (In re Crysen/Montenay Energy Co.),* 902 F.2d 1098, 1105 (2d Cir. 1990). Although courts are required to award actual damages to an injured plaintiff for violations of the automatic stay, the imposition of punitive damages is left to the court's discretion. See *In re Timbs,*

---

**2.** Section 362(k)(1) is subject to an exception set forth in subparagraph (2); however, that exception is inapplicable to the case at bar.

178 B.R. 989, 997 (Bankr.E.D.Tenn.1994). The factors considered in a § 362(k) punitive damages action "include the nature of the creditor's conduct, the creditor's ability to pay the damages and the creditor's motives, and any provocation by the debtor." *Emberton v. Lobb (In re Emberton)*, 263 B.R. 817 (Bankr.W.D.Ky.2001). Courts are generally reluctant to award punitive damages under § 362(k) and will typically do so only in cases that "involve conduct that is egregious, vindictive or intentionally malicious," or "when there is a strong showing that the creditor acted in bad faith or otherwise undertook their actions in reckless disregard of the law." *In re Bivens*, 324 B.R. 39, 42–43 (Bankr. N.D.Ohio 2004). Courts have also found that actions "taken in arrogant defiance of federal law" can give rise to an award of punitive damages. *In re Russell*, 441 B.R. 859, 863 (Bankr.N.D.Ohio 2010).

At the hearing in the case at bar, Hunt admitted in his pleadings that he received a letter from the Debtor's attorney on November 8, 2010, informing him of the bankruptcy filing and the existence of the automatic stay. Despite having this knowledge, Hunt deliberately refused to cooperate in voiding the sale and reconveying the Trenton property to the Debtor at any time after this date. Clearly, these actions were willful and constitute a violation of the automatic stay for which the imposition of damages is appropriate under § 362(k).

From at least November 8, 2010, until now, Hunt has clearly defied the mandates of federal bankruptcy law. Hunt admitted he received the letter from Debtor's counsel informing him of the bankruptcy proceeding. He also admitted in his pleadings that USDA contacted him regarding the existence of this case on several occasions and informed him that as a result of the automatic stay, the October 5, 2010, foreclosure sale was void. Hunt's motion to dismiss the complaint was heard by this Court on January 13, 2011, at which time his counsel argued that his actions did not violate the automatic stay. The Court denied his motion. In so doing, the Court informed Hunt's counsel that the automatic stay was in effect at the time of the foreclosure sale and that the issue of notice was irrelevant to the protections afforded thereby; however, the Court finds that Hunt's refusal to cooperate in the voiding of the foreclosure sale was not egregious, vindictive or intentionally malicious. The Court also finds that Hunt's actions were not the result of a reckless disregard of the federal bankruptcy laws, but were instead the result of a very mistaken understanding of how those laws work. As a result, the Court finds that an award of punitive damages is not appropriate in this case.

Although the Court has found that the Debtor is entitled to an award of actual damages against Hunt under 11 U.S.C. § 362(k), the Court is not making a determination as to the amount of those damages at this time. As will be discussed infra, the Court is without jurisdiction to hear Hunt's claims against USDA and will therefore abstain from adjudicating those claims. Without hearing those claims, it is impossible for the Court to determine the amount of damages. Any damages Hunt owes to the Debtor may be offset by potential liability USDA has to Hunt.

### C. Hunt's Cross Claim

The subject matter jurisdiction of bankruptcy courts is set forth in 28 U.S.C. § 1334(a) [3]. Bankruptcy courts have juris-

---

**3.** 28 U.S.C. § 1334 gives district courts original and exclusive jurisdiction of bankruptcy cases. 28 U.S.C. § 157(a) gives district courts the power to refer all bankruptcy cases to bankruptcy courts.

diction to hear all cases under title 11 of the United States Code (the Bankruptcy Code) and all claims arising thereunder. 28 U.S.C. §§ 157(b) and 1334. These "arising under" claims are referred to as "core" proceedings and "either invoke[ ] a substantive right created by federal bankruptcy law or ... could not exist outside of the bankruptcy." *Browning v. Levy,* 283 F.3d 761, 773 (6th Cir.2002) (internal quotation marks and citations omitted). Core proceedings include matters concerning the administration of the bankruptcy estate, § 157(b)(2)(A), "proceedings to determine, avoid or recover preferences," § 157(b)(2)(F), and "motions to terminate, annul, or modify the automatic stay," § 157(b)(2)(G).

If a matter does not "arise under" a bankruptcy case, but is only related thereto, it is what is referred to as a noncore proceeding. 28 U.S.C. § 157(c). In those instances, the bankruptcy court may hear the matter, but may not enter a final order. Instead, the bankruptcy court must submit proposed findings of fact and conclusions of law to the district court which then reviews the bankruptcy court's conclusions and enters a final order. 28 U.S.C. § 157(c)(1). *Id.* The only exception to this rule is found in 28 U.S.C. § 152(c)(2) which provides that a bankruptcy court may issue final orders in noncore proceedings with the consent of all the parties. In the case at bar, Hunt has consistently stated in his pleadings that his cross-claims against USDA are noncore proceedings and that he does not consent to the issuance of final orders by this Court.

■■■■ In addition to the core/noncore distinction, a court may also decide to abstain from hearing a matter under federal abstention doctrines.[4] Section 1334(c)(1)

of Title 28 sets forth the doctrine of permissive abstention and provides that

> nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1). "Stated in the disjunctive, the plain language of the statute permits a district court, and a bankruptcy court if so delegated under 28 U.S.C. § 157(a), to abstain from exercising its jurisdiction to adjudicate a core or noncore matter 'in the interest of justice' if abstention lies in favor of another federal court." *In re Repurchase Corp.,* 329 B.R. 832, 835 (Bankr.N.D.Ill.2005).

In the case at bar, Hunt is not one of the Debtor's creditors and, if not for the automatic stay violation, would not be before this Court. The only relation Hunt's cross-claims against USDA have to this case is that they arise out of the postpetition foreclosure which the Court has found was void. It is true that Hunt has to relinquish ownership of the Trenton property because USDA conducted the foreclosure in violation of the automatic stay. It is also true that his alleged claims against the USDA have arisen because the sale is being set aside because it violated the automatic stay. Aside from those two facts, however, none of Hunt's allegations against USDA are at all related to this case. He has claims against USDA for injuries he sustained from the foreclosure sale based on USDA's actions. Those actions have nothing to do with the Debtor in this case except for the fact that the automatic stay makes the sale void. Although the Court appreciates the impact bank-

---

4. Although none of the parties in this matter filed a formal motion to abstain, a court may raise the issue *sua sponte. Beneficial Nat'l*

*Bank v. Best Receptions Sys., Inc. (In re Best Reception Sys., Inc.),* 220 B.R. 932, 952 (Bankr.E.D.Tenn.1998).

ruptcy law has had on the sale, it Concludes that it is not enough of a nexus to bring Hunt's claims within the purview of this Court. At least a portion of Hunt's claims against USDA may be governed by the Federal Tort Claims Act which provides a basis for jurisdiction in another federal court.

The Court has done all it can do in this case. USDA and Hunt violated the automatic stay. The Court has conducted the hearings on the relevant motions and found the October 4, 2010, foreclosure sale to be void pursuant to 11 U.S.C. § 362. The Court has found that in failing to cooperate in voiding the sale Hunt has committed a willful violation of the automatic stay and is therefore liable to the debtor for her actual damages. The only matters left to be resolved are Hunt's claims against USDA and the issue of the Debtor's actual damages, including what portion of those damages Hunt is liable for. Only the court that adjudicates Hunt's cross-claims against USDA can adequately determine what the amount of the Debtor's damages are. This Court would be unable to make that determination without hearing the entire matter—which is something this Court finds it is jurisdictionally unable to do. And, because the Court found that there was no basis to award the Debtor punitive damages from Hunt, any calculation of the Debtor's actual damages will not impact her case.

In accordance with the Court's May 19, 2011, ruling in open court, the attorney for USDA is hereby directed to prepare and enter an order in accordance with this opinion. Said order shall be entered within 7 days from entry of this memorandum opinion.